**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT J. BUCHANAN,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION NO. 1:05-CV-0887** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **UNITED STATES OF AMERICA, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

Before the Court is a Report and Recommendation from Magistrate Judge Mannion

recommending that this Court grant Defendants' motion to dismiss and for summary judgment.[1]

(Doc. No. 35.)  Plaintiff filed objections to the Magistrate Judge's Report and Recommendation

(Doc. No. 36), and Defendants filed a reply to Plaintiff's objections (Doc. No. 37).  Additionally,

Plaintiff filed a "Letter to Be Adopted In and For the Record" (Doc. No. 38) and a

"Supplemental Filing to Assist in Decision of the Herein Captioned Case" (Doc. No. 39).

The Court has considered de novo the above mentioned documents, Plaintiff's complaint

(Doc. No. 1), and the memorandum Plaintiff filed in support of his complaint (Doc. No. 12).

For the reasons that follow, the Court agrees with Magistrate Judge Mannion's recommendation

that Defendants' motion should be granted.

**I.      BACKGROUND**

Plaintiff, currently an inmate at the Federal Correctional Institution at Schuylkill,

---

[1] Defendants' motion to dismiss and brief in support thereof contains one section
addressing grounds for dismissal under Rule 12(b)(6) and a second section addressing summary
judgment on the basis of qualified immunity.  In the dismissal section, Defendants contend that
Plaintiff has failed to allege personal involvement of the majority of the individual Defendants in
the alleged constitutional violations.  Defendants also argue that the United States is entitled to
sovereign immunity on Plaintiff's claims.

Minersville, Pennsylvania (FCI-Schuylkill), brought this <u>Bivens</u>[2] action against the United States of America, Former Attorney General Ashcroft, and various directors, employees, and staff of the Bureau of Prisons, alleging that the Defendants violated his Eighth Amendment rights.  (Doc. No. 1.)  Specifically, Plaintiff sets forth two claims: first, that Defendants provided inadequate care for and were deliberately indifferent to an injury to his right index finger; and second, that Defendants exposed him to an unacceptable level of secondhand environmental tobacco smoke ("ETS") with deliberate indifference to its severe detrimental effect on his present and future physical health.  Plaintiff does not specify which claims apply to which Defendants; instead, he refers to the Defendants collectively and apparently seeks to impose liability equally on all Defendants for both claims.

Because Defendants' motion is styled as both a motion to dismiss and a motion for summary judgment, the Court will briefly review the allegations in Plaintiff's complaint and memorandum of law in support thereof.  (Doc. Nos. 1 & 12).  The more complete factual background, relevant to the Court's discussion of the appropriateness of summary judgment, is set forth in detail in Magistrate Judge Mannion's Report and Recommendation and will not be repeated here.  (Doc. No. 35.)

With respect to his finger, Plaintiff's complaint states that on August 2, 2003, while being held in the Federal Detention Center, Philadelphia (FDC-Philadelphia), Plaintiff sustained a 2.5 centimeter laceration to his finger while playing basketball.  (Doc. No. 1, ¶ 25.)  The

---

[2] <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971) (recognizing an implied cause of action for damages against federal officers who violated the Fourth Amendment).

medical personnel at FDC-Philadelphia cleaned and sutured the wound (id.); however, they did not administer any local anesthesia or pain medication to Plaintiff before or after stitching up the injured finger, causing Plaintiff increased pain and allegedly running afoul of the Eighth Amendment.[3]  (Doc. No. 12, at 7.)  Approximately two months later, on September 29, 2003, Plaintiff complained about the level of care he received for his finger injury.  (Doc. No. 1, ¶ 26.) Plaintiff received a referral for hand therapy, and he was examined by a specialist on October 15, 2003.  (Id. ¶ 27.)  Plaintiff was later transferred to FCI-Schuylkill, where, on November 11, 2003, he submitted a written complaint to non-party Dr. Henershot about his finger.  Thereafter, from November 14, 2003, until November 17, 2004, Plaintiff filed various administrative complaints and appeals relating to the care of his finger, which were addressed by Defendants Shires, Nash, Dodrill, Lappin, Watts, and Sadowski.  (Doc. No. 1, ¶¶ 30-49.)  In his memorandum, Plaintiff asserts that he suffers mental anguish and fear of not receiving adequate medical care in the future while still incarcerated.  (Doc. No. 12, at 6.)

Plaintiff's second claim relates to his alleged involuntary exposure to ETS.  (Doc. No. 1, ¶ 52.)  In his memorandum and complaint, Plaintiff asserts that he has suffered from "eye irritation, nausea, headaches and breathing problems as a result of the high levels of direct contact with 'passive smoking' exposure which were occurring here at FCI-Schuylkill."  (Doc.

---

[3]  Although the complaint lists as Defendants numerous individuals associated with FDC-Philadelphia – three John or Jane Doe wardens and associate wardens, Health Services Director Administrator Martinez, Dr. Massa, Dr. Reynolds, Nurse Smith, and Mid-Level Practitioner Ritter – Plaintiff does not specify which of these eight individuals were involved in the cleaning and suturing of his finger.  A review of documents outside of the complaint indicates that Defendant Nurse Smith cleaned and sterilized the finger and that Defendant Martinez performed the suturing.  (Doc. No. 24, at 4) (declaration of Dr. Henderson); (Doc. No. 24, at 17) (inmate injury, assessment, and follow-up form).

No. 12, at 9) (emphasis in original removed); (Doc. No. 1, ¶ 52).  Plaintiff further alleges that the continued exposure to the ETS has endangered his present and future health.  Moreover, Plaintiff asserts that Defendants' have intentionally failed to enforce the prison's non-smoking policy and that such failure "can be interpreted as a degree of reckless indifference for the health of the plaintiff."  (Doc. No. 12, at 9) (emphasis in original removed).  Plaintiff's complaint also sets forth the series of administrative complaints and appeals that he made related to his claim of involuntary ETS exposure (Doc. No. 1, ¶¶ 34-48), and he states that Defendants ignored these constitutional complaints for some time.  (Id. ¶ 52.)

In light of these alleged constitutional violations, Plaintiff requests various forms of declaratory and injunctive relief, millions of dollars of compensatory, punitive, and special damages, attorneys fees, and any other appropriate relief.  (Doc. No. 1, ¶¶ 55-63.)

## II.    STANDARD OF REVIEW

### A.    Rule 12(b)(6) standard for a motion to dismiss

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  When considering a motion to dismiss, the Court accepts as true all factual allegations contained in the complaint and views them in the light most favorable to the plaintiff.  U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).  The plaintiff is required to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist."  Kost, 1 F.3d at 183 (citations omitted).  The Court should grant a motion to dismiss only if it appears the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir. 1985) (citations omitted).  Moreover, given the

early stage of the proceedings, the Court should not "inquire whether the plaintiffs will ultimately prevail." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996). Rather, the Court should only inquire as to whether Plaintiff is "entitled to offer evidence to support [his] claims." Id.

**B.      Rule 56 standard for summary judgment**

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-51 (1986). When deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, who is "entitled to every reasonable inference that can be drawn from the record." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

Faced with such a motion, the adverse party must produce affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim. Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001) (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)). Only if this burden is met can the cause of action proceed. Anderson, 477 U.S. at 250-57; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see

Fed. R. Civ. P.  56(c), (e).

## III.    DISCUSSION

Magistrate Judge Mannion has recommended that the Court grant Defendants' motion to dismiss and motion for summary judgment.  In footnote four of his opinion, Magistrate Judge Mannion notes that he did not address the motion for partial dismissal of certain Defendants because he found that summary judgment in Defendants' favor was appropriate.  (Doc. No. 35, at 4 n.4.)  Defendants moved for summary judgment on the ground that they were entitled to qualified immunity from Plaintiff's claims.  (Doc. No. 23, at 24-37.)  Because qualified immunity would not dispose of all of Plaintiff's claims – for example, the claim against the United States and the claims for injunctive relief – the Court will adopt Magistrate Judge Mannion's Report and Recommendation, address Plaintiff's objections to the same, and elaborate upon its reasons for granting Defendants' motion to dismiss and motion for summary judgment.

### A.    Plaintiff's claims against the United States and the individual Defendants in their official capacities

Although Plaintiff did not object on this ground, the Court notes that qualified immunity does not preclude all of Plaintiff's claims because qualified immunity only bars claims for monetary relief against individual government officers, and here Plaintiff has brought this action against the United States and named government actors, and he seeks monetary, declaratory, and injunctive relief.

In their motion to dismiss, Defendants argued that "it is well established that the doctrine of sovereign immunity renders the United States of America and its departments immune from suit except where the United States has consented to be sued."  (Doc. No. 23, at 21-22) (citing

cases).  Absent an express constitutional waiver of sovereign immunity, for example the Federal

Tort Claims Act, see 28 U.S.C. § 2674, the United States cannot be sued.  FDIC v. Meyer, 510

U.S. 471, 475 (1994).  Here, Plaintiff's claims are brought only under Bivens v. Six Unknown

Federal Narcotics Agents, 403 U.S. 388 (1971), and it is established that a Bivens action will not

lie against the United States government or its federal agencies.  See FDIC, 510 U.S. at 485

(noting that the Court "implied a cause of action against federal officials in Bivens in part

because a direct action against the Government was not available") (citation omitted) (emphasis

in original); see also Wolf v. United States, 127 F. App'x 499, 501 (Fed. Cir. 2004) (affirming

the district court's dismissal of Bivens claims "as such actions cannot be maintained against the

United States").  Accordingly, Plaintiff's claims against the United States must be dismissed.

The Court further notes that a Bivens action is not available against the individual

governmental officers in their official capacities.  See, e.g., Doe v. Chao, 306 F.3d 170, 184 (4th

Cir. 2002) ("[A] Bivens action does not lie against either agencies or officials in their official

capacity.").  Accordingly, to the extent that Plaintiff has sued the individual Defendants purely in

their official capacities, Plaintiff has failed to state a cognizable claim.

**B.      Plaintiff's Eighth Amendment claims relating to his finger**

Plaintiff objects to Magistrate Judge Mannion's conclusion that Defendants are entitled

to qualified immunity on the claim of failure to provide adequate medical care and deliberate

indifference to his finger injury.  He argues that Magistrate Judge Mannion was "operating in his

decision and opinion thereof under false data and misimpressions as to the exact nature of the

case," (Doc. No. 36, at 1), and restates his position that it is never acceptable or adequate to

"leave a finger which could be further rehabilitated or work on in a state where it does not fully

function."[4]  (Id. at 6.)  Moreover, Plaintiff takes issue with the characterization of his claim as a

disagreement over treatment.  (Id. at 12.)

### 1.      Claims for monetary damages

Whether reviewed under a Rule 12(b)(6) motion to dismiss standard or a Rule 56

summary judgment standard, the Court is convinced that Plaintiff's Eighth Amendment claim

relating to his finger must fail.

In essence, Plaintiff's complaint and the accompanying memorandum assert that Plaintiff

sustained a 2.5 centimeter laceration to his finger, that the laceration was promptly cleaned and

sutured by FDC-Philadelphia medical personnel without the benefit of anesthesia or painkillers,

and that the deliberate decision not to administer anesthesia or pain killing medicine subjected

him to unnecessary pain in violation of the Eighth Amendment's prohibition against cruel and

unusual punishment.  A consideration of these allegations and relevant case law leads to the

conclusion that Plaintiff has failed to state a cognizable Eighth Amendment claim.

To state an Eighth Amendment violation of the right to adequate medical care, a plaintiff

must allege: (1) a serious medical need and (2) that the defendant was deliberately indifferent to

the plaintiff's need.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  Here, Plaintiff's

"serious medical need" was not for local anesthesia, but for the treatment of his lacerated finger

– a need which Defendants promptly addressed by cleaning, sterilizing, and suturing it.  See

---

[4]  In his objections to the Report and Recommendation, Plaintiff takes issue with the
follow-up care he received for his finger injury, an issue which, while mentioned in his
opposition to Defendants' motion (Doc. No. 29, at 6), was not presented in the complaint or
accompanying memorandum.  (See Doc. No. 36, at 12; No. 38, at 7) (raising the issue of follow-
up care in his objections to the Report and Recommendation).  Given the evidence in the record,
the Court's analysis of Plaintiff's claim would not be different had such allegations been made in
the complaint – summary judgment would still be appropriate.

<u>Snipes v. DeTella</u>, 95 F.3d 586, 591 (7th Cir. 1996) (concluding that the "serious medical need" and the treatment for the same cannot be parsed out into two discrete acts for Eighth Amendment purposes); <u>see also</u> <u>Bout v. Bolden</u>, 22 F. Supp. 2d 646, 651 (E.D. Mich. 1998) ("[W]here pain was an incidental part of a dentist's chosen course of treatment, the question is not whether [the dentist] was indifferent to the incidental pain, but rather whether he was indifferent to plaintiff's existing dental condition.").  Even if the administration of an anesthetic or painkiller for a relatively minor procedure can be considered a "serious medical need," Plaintiff's claim still falls short of asserting an Eight Amendment violation.  <u>See</u> <u>Snipes</u>, 95 F.3d at 591 (the denial of local anesthesia for a minor procedure "was not, objectively, sufficiently serious to constitute the denial of the minimal civilized measure of life's necessities, whatever the doctor's motive might have been.") (internal quotations and citations removed).  The Court is persuaded by the reasoning of Seventh Circuit in <u>Snipes</u>:

> A doctor's decision not to anesthetize a toe before removing a partially torn-off toenail – like the decision to remove a big splinter or stitch a cut without anesthetic – is not the type of barbaric treatment the Eighth Amendment was intended to prevent.  To the extent such a decision is medically erroneous, it cannot be characterized as disregard for "an <u>excessive</u> risk to inmate health or safety."

<u>Id.</u> at 591 (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)).

Moreover, even if Plaintiff alleged a cognizable claim under the Eighth Amendment, he would be unable to overcome a motion for summary judgment on the merits or on the basis of qualified immunity.  Magistrate Judge Mannion's Report and Recommendation fully details the medical treatment Plaintiff received for his finger, including follow-up care after the suturing. (Doc. No. 35, at 25-29).  Based on a consideration of these facts, Magistrate Judge Mannion

concluded, and this Court agrees, that "it is clear that the plaintiff received medical treatment for

his injured finger.  It is equally clear, that the plaintiff is simply disagreeing with the treatment

he received."  (Id. at 29.)  This disagreement is not a constitutional claim for deliberate

indifference that should be submitted to a jury.  See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir.

2004) ("[M]ere disagreement as to the proper medical treatment is also insufficient" to state a

violation of the Eighth Amendment) (internal quotation and citation omitted);  Farmer v.

Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988) (same).

In light of the facts and relevant case law, Plaintiff will not be able overcome

Defendants' assertion of qualified immunity.  See Saucier v. Katz, 533 U.S. 194, 201 (2001) (the

first step in a qualified immunity analysis is determining whether the government official's

conduct violated a constitutional right).  Accordingly, Plaintiff's assertion that his Eighth

Amendment rights were violated by Defendants' inadequate treatment of his finger is without

merit.

### 2.     *Claims for injunctive and declaratory relief*

In addition to damages for his finger, Plaintiff also requested various forms of declaratory

and injunctive relief related to the quality and oversight of medical care at the FCI-Schuylkill.

While federal officers may be sued for injunctive relief to prevent future infringement of the

laws, Plaintiff has failed to present any evidence that Defendants' conduct has or is likely to run

afoul of federal law or that he will, in fact, suffer an injury as a result.  See ACLU of N.J. v.

Black Horse Pike Reg'l Bd. of Educ., 84 F.3d 1471, 1477 n.3 (3d Cir. 1996) ("In deciding

whether a permanent injunction should be issued, the court must determine if the plaintiff has

actually succeeded on the merits (i.e. met its burden of proof).  If so, the court must then

consider the appropriate remedy.") (citing <u>CIBA-GEIGY Corp. v. Bolar Pharmaceutical Co., Inc.</u>, 747 F.2d 844, 850 (3d Cir. 1984)).

As discussed above and in greater detail in Magistrate Judge Mannion's opinion, Plaintiff cannot establish that an Eighth Amendment violation occurred with respect to Defendants' treatment of his finger.  Plaintiff has neither articulated a cognizable Eighth Amendment claim nor proffered sufficient evidence for a fact-finder to conclude that the Defendants provided inadequate medical care and/or were deliberately indifferent to the condition of his finger.  To the contrary, as Magistrate Judge Mannion noted, the evidence of record establishes that Plaintiff received adequate care for his finger.  There has been no constitutional violation, and there is no ongoing harm for which injunctive relief may be appropriately granted.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 846 (1994) (to avoid summary judgment and establish eligibility for injunctive relief, Plaintiff must "come forward with evidence from which it can be inferred that the defendant-officials were at the time the suit was filed, and are at the time of summary judgment, knowing and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so . . . during the remainder of the litigation and into the future"); <u>see also</u> <u>Anderson v. Davila</u>, 125 F.3d 148, 164 (3d Cir. 1997) (stating that "a party seeking injunctive relief must at least demonstrate that there exists some cognizable danger of recurrent violation of its legal rights") (internal quotation marks and citation omitted).  Considering the allegations in the complaint and the lack of evidentiary support for the same, the Court will grant summary judgment for Defendants on all claims related to Plaintiff's finger.

**C.     Plaintiff's Eighth Amendment claims related to involuntary ETS exposure**

The majority of Plaintiff's written material addresses what he believes to be the improper

recommendation that Defendants be granted summary judgment on his claims for present and

future injury because of exposure to ETS.  Plaintiff objects to Magistrate Judge Mannion's

consideration and characterization of numerous facts, to his finding that Plaintiff had not

introduced evidence to support his claim of a constitutional violation, and to his conclusion that

Defendants have made a proper showing that they are entitled to qualified immunity.

Plaintiff argues that the Third Circuit's decision in Atkinson v. Taylor, 316 F.3d 257 (3d

Cir. 2003), stands for the proposition that qualified immunity is not permitted in claims for

involuntary exposure to ETS.  (Doc. No. 39.)  While it is true that the court in Atkinson upheld

the district court's conclusion that the defendants were not entitled to qualified immunity,

Plaintiff overlooks the fact-specific inquiry in which the district court and the circuit court

engaged to reach that determination.  See Atkinson, 316 F.3d at 264-66 (for example, the circuit

court specifically notes that Atkinson had offered some proof for each element of the alleged

Eighth Amendment violation).  This is the same type of factual inquiry performed in this case by

Magistrate Judge Mannion in his Report and Recommendation and by this Court now.

Determining whether a government official has qualified immunity involves a two-step

analysis.  Id. at 261.  "First, the court must determine whether the facts, taken in the light most

favorable to the plaintiff, show a constitutional violation.  If the plaintiff fails to make out a

constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to

immunity."  Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002); see also Atkinson, 316 F.3d

at 261 (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).  If the plaintiff establishes a

constitutional violation, the second step in the analysis is determining whether the right was

clearly established, such that a reasonable officer would understand that his conduct violated the

right.  Atkinson, 316 F.3d at 261 (quoting Saucier, 533 U.S. at 201).

Turning to the first step of the qualified immunity analysis, the test for whether a prisoner has made out a constitutional violation in the context of involuntary exposure to ETS has both objective and subjective components.  Helling v. McKinney, 509 U.S. 25, 35-36 (1993); see Estelle v. Gamble, 429 U.S. 97, 100 (1976).  In a claim for present injury because of exposure to ETS, the objective component requires the injury be serious.  Estelle, 429 U.S. at 106.  Exposure to ETS is not an objectively serious injury per se.  See Helling, 509 U.S. at 34-35.  To assert a cognizable claim for future injury, a plaintiff must establish that he has a serious medical need for a smoke free environment, see Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992), or that regardless of health, the level of ETS in the prison creates an unreasonable risk of serious damage to his future health.  Helling, 509 U.S. at 35-36.  The subjective component of the Eighth Amendment inquiry for ETS claims requires that a plaintiff show behavior on the part of prison officials that constitutes a deliberate indifference to his serious medical needs, health, and safety.  Farmer v. Brennan, 511 U.S. at 837; Estelle, 429 U.S. at 106.  To be found deliberately indifferent, the prison official must know of the inmate's substantial risk of serious harm and disregard that risk by failing to take measures to abate it.  Farmer, 511 U.S. at 837.  With this legal framework in mind, the Court turns to Plaintiff's objections to the Report and Recommendation.

The Court has considered Plaintiff's factual and legal objections in detail and is mindful that Plaintiff has not yet engaged in the formal discovery process.  However, even taking into consideration the early stage of litigation – Defendants have filed no answer and no formal discovery has been conducted – Plaintiff has simply failed to make a showing that Defendants'

conduct violated a constitutional right.  Because Plaintiff has failed to make out a constitutional

violation, the qualified immunity inquiry ends at the first step, and Defendants are entitled to

qualified immunity on Plaintiff's claims for present and future injury because of involuntary

exposure to ETS.

### 1.      Claim for present injury because of exposure to ETS

With respect to Plaintiff's claim for present injury, Plaintiff disputes Magistrate Judge

Mannion's findings that Plaintiff did not suffer a serious medical need and that Plaintiff failed to

causally connect any alleged medical need to ETS exposure; in essence, Plaintiff argues that the

first step of Estelle – a serious medical need – has been met.  See Estelle, 429 U.S. at 106.

Accepting as true Plaintiff's contention that he has suffered from eye irritation, nausea,

headaches, and breathing problems and that these afflictions amount to serious medical needs,

Plaintiff has failed to affirmatively link any of these alleged current health problems to ETS.

Plaintiff simply speculates that ETS has caused these various ailments.  (E.g. Doc. 38, at 2)

(Plaintiff's "symptoms are logically in line with smoke exposure").  However, "such

unsubstantiated assertions are not sufficient to establish the causal connection between plaintiff's

. . . condition, during the relevant time frame, and exposure to unreasonably high levels of ETS."

Warner v. Sherrer, No. 03-1723, 2005 WL 2416972 (D.N.J. Sept. 30, 2005) (citing Richardson

v. Spurlock, 260 F.3d 495, 498 (5th Cir. 2005)).

Assuming arguendo that Plaintiff does have present injuries which he can link to

exposure to ETS, he has failed to meet the second, subjective prong of the Eighth Amendment

analysis for his present injury claim – he has not introduced facts showing that the prison

officials were aware of and deliberately indifferent to his alleged serious medical need, the

smoke-related maladies.  See Estelle, 429 U.S. at 106.  Other than to say that it is foolish to "quibble over if the Plaintiff 'reported' various symptoms," (Doc. No. 36, at 4), Plaintiff advances no arguments with respect to Magistrate Judge Mannion's conclusion that the prison officials were unaware of Plaintiff's alleged smoke-induced injuries and therefore could not have been deliberately indifferent to the present injuries.  Plaintiff's abovementioned statement misses the mark since a person cannot be deliberately indifferent to serious medical needs of which he is unaware.

Notably, Plaintiff does not, in his objections or letter submissions, identify any instances where he informed prison officials of his symptoms.  By his own admission, Plaintiff did not inform Defendants of his eye irritation, nausea, headaches, and breathing problems because be assumed the staff would think he was lying or crazy.  (Doc. No. 29, at 11); see also (Doc. No. 36, at 4 and 7) (noting that the majority of his symptoms remain "uncharted or undocumented, often times spent in private").  Plaintiff's medicals records make no reference to smoke-induced symptoms.  (Doc. 24, 1-59, Ex. 4.)  Furthermore, the Court's review of Plaintiffs administrative complaints and appeals reveals that Plaintiff never mentioned suffering any ETS-related symptoms in his BP-8 ½, BP-9, BP-10, or BP-11.  (Doc. No. 21, at 13-19, Ex. B)  The forms contain general complaints about involuntary exposure to ETS and the failure of prison officials to take action, but they do not inform the recipients of Plaintiff's alleged smoke-related maladies. (Id.)  In fact, Plaintiff's first assertion of physical symptoms appears on his FTCA complaint. (Doc. No. 24, at 6-7, Ex. B) (complaining of "headaches, irritation of the eyes, difficult breathing, and nausea").

The record is clear that Plaintiff did not notify Defendants of his alleged present injuries,

and the law is clear Defendants cannot be held deliberately indifferent to a medical need of which they were unaware.  Farmer, 511 U.S. at 837.  Thus, Plaintiff has not shown a viable claim for present injury related to exposure to ETS, and the first step of the qualified immunity analysis – showing a constitutional violation – has not been met.  Defendants are entitled to summary judgment on Plaintiff's claim of present injury relating to ETS exposure.

### 2.   Claim for future injury because of exposure to ETS

With respect to his claim for future injury because of ETS, Plaintiff contends that he has satisfied the objective and subjective components of the Eighth Amendment analysis.  Helling, 509 U.S. at 35-36 (a plaintiff must show objectively that he is being exposed to unreasonably high levels of ETS and subjectively that Defendants were deliberately indifferent to this grave risk).

With respect to the objective showing required by Helling, Plaintiff's primary arguments are that he is constitutionally entitled to a smoke free environment and that an inmate should not be required to show, for example, through scientific or statistical inquiry, the seriousness of the potential harm and likelihood of injury because of ETS.[5]

Initially, Plaintiff argues that he is constitutionally entitled to a smoke-free environment, and therefore that any amount of ETS in the prison is unreasonable.  (E.g. Doc. No. 36, at 9-10).  Plaintiff cites no legal authority in support of this contention, but instead refers to the prison's ban on smoking and to the "Health-Care Rights and Responsibilities" for and about inmates at FCI-Schuylkill.  (Doc. No. 39, App. I) ("You have the right to a safe, clean and health

---

[5]  In addition to these main arguments, Plaintiff contends that the magistrate (1) failed to adequately consider the long-term effects of ETS exposure and (2) improperly considered Plaintiff's purchase of tobacco products in developing his Report and Recommendation.

environment including smoke free living. . . . You have the responsibility to follow the smoking regulations.").  Contrary to Plaintiff's belief, "Helling did not read the Eighth Amendment as mandating smoke-free prisons.  It is impossible to read any such per se rule into Helling's 'objective' element."  Scott v. District of Columbia, 139 F.3d 940, 942 (D.C. Cir. 1998); see also Mills v. Clark, 229 F.3d 1143, at *5 & n.5 (4th Cir. 2000) (table) ("Helling does not guarantee plaintiff a smoke free environment").  Had the Court in Helling made such a broad pronouncement, there would be no reason for it to require "a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk."  Helling, 509 U.S. at 36 (emphasis in original).  Thus, under the Eighth Amendment, Plaintiff is entitled to an environment free from unreasonably high levels of ETS which pose an unreasonable risk to his future health, id., and his objection on this point will be overruled.

Even though Plaintiff recognizes the importance of considering "how bad [the ETS] is and how long has the Plaintiff been exposed (and will he be exposed to [ETS while] remaining incarcerated)," (Doc. No. 29, at 4), he nevertheless argues that an inmate should not be required to show, for example through scientific or statistical inquiry, the seriousness of the potential harm and likelihood of injury because of ETS (Doc. No. 36, at 10).  Plaintiff argues"[i]t is wholly unrealistic to require this magnitude of proof" from an indigent prisoner.  (Doc. No. 36, at 10); (see also Doc. No. 38, at 3) ("So-called 'Scientific and Statistical Inquiry' is most unreasonable and setting up for failure, for any inmate initiated civil action against ETS").  The Court is not insensitive to Plaintiff's position as an indigent prisoner.  Nevertheless, Plaintiff must introduce evidence sufficient to meet the objective showing required by Helling, and here

Plaintiff has failed to offer any meaningful evidence regarding the "levels" of ETS to which he is personally exposed or regarding the consequent increased risk of serious injury to his future health.  See Helling, 509 U.S. at 35-36.  Plaintiff has provided and/or offered to provide the Court with names of various individuals, staff and inmates alike, allegedly smoking in violation of the prison's non-smoking policy.  Plaintiff's anecdotal evidence and vague generalizations, however, do not indicate how many individuals are smoking, how much these individuals smoke, how frequently they smoke, or whether they smoke within close proximity to Plaintiff.  "There is simply nothing in the record that explains to this Court the actual levels of ETS in plaintiff's cell or to which he was exposed."  Warner, 2005 WL 2416972, at *10 (collecting cases where the Plaintiff did demonstrate an unreasonable level of ETS and comparing them to those cases where a sufficient showing was not made).  Plaintiff's failure to provide any meaningful objective evidence of the amount of his ETS exposure (or of the seriousness or harmfulness of this level of exposure on his future health) leads to the conclusion that Plaintiff has not met his burden under the objective component of the Helling analysis.

Moreover, even if Plaintiff had satisfied the objective component, he would be unable to make the subjective showing of deliberate indifference on the part of Defendants.  With respect to his objections on this point, Plaintiff reiterates many of the same arguments presented to Magistrate Judge Mannion and emphasizes that "the fallacy of the ban is the primary issue for trial."  (Doc. No. 38, at 6.)  According to Plaintiff, Defendants' failure to enforce the non-smoking policy demonstrates their deliberate indifference to the levels of ETS to which inmates are exposed.  (Doc. No. 36, at 1-2.)

Courts have explained that "imperfect enforcement of a non-smoking policy does not

equate to deliberate indifference." Edwards v. Samuels, 2007 WL 81884, *7 (D.N.J. 2007)

(citing Franklin v. District of Columbia, 163 F.3d 625, 636 (D.C. Cir. 1998); Morris v. Lorillard,

No. 04-2617, 2006 WL 2796029 (M.D. Pa. Sept. 25, 2006)); see also Scott, 139 F.3d at 944.

The materials submitted by Defendants indicate FCI-Schuylkill has been in compliance with its

rules on smoking both before and after the total ban was instituted, that inmates and staff were

apprised of these rules, and that known violators have been and continue to be held accountable.

(E.g. Doc. No. 24, Ex. 2; Doc. No. 32, Ex. 5.)  In fact, Plaintiff acknowledges that staff members

found violating the non-smoking policy "have been disciplined, moved from the facility or

warned for [the] same." (Doc. No. 36, at 9.)  Plaintiff also admits that in February and March of

2006, "a series of 'shake-downs' or searches by staff of inmate rooms, belongings and alike"

resulted in the confiscation of "considerable quantities of tobacco." (Doc. No. 34, at 4.)  These

efforts made by the prison staff to enforce the non-smoking rules undercut an assertion that

Defendants were deliberately indifferent to violations of the non-smoking rules.

The facts of record, taken in the light most favorable to the plaintiff, fall short of what is

needed to establish a viable claim for future injury because of involuntary exposure to ETS.

Because Plaintiff is unable to make the objective and subjective showing required under the

relevant Eighth Amendment analysis, Defendants are entitled to qualified immunity on this

claim.

## IV.    CONCLUSION

In conclusion, the Court will grant Defendants' motion to dismiss and for summary

judgment.  Plaintiff cannot bring a Bivens action against the United States and the named

Defendants in their official capacities; accordingly, these claims will be dismissed.  Defendants

are entitled to summary judgment on Plaintiff's claims related to his finger and for his claims present and future injury because of involuntary exposure to ETS.  Under the first step of a qualified immunity analysis, the Court must inquire "whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation."  <u>Bennett</u>, 274 F.3d at 136.  Plaintiff has failed to establish a constitutional violation with respect either to his finger injury or to his exposure to ETS for the reasons discussed herein; therefore, Defendants are shielded from suit by the doctrine of qualified immunity.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT J. BUCHANAN,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION NO. 1:05-CV-0887** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **UNITED STATES OF AMERICA, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

And now, this 27th day of March, 2007, **IT IS HEREBY ORDERED THAT** Plaintiff's objections (Doc. No. 36, 38, 39) are **OVERRULED** and Magistrate Judge Mannion's Report and Recommendation (Doc. No. 35) is **ADOPTED** insofar as it is not inconsistent with the Court's analysis in the attached memorandum.

     **IT IS FURTHER ORDERED** that:

1. Plaintiff's <u>Bivens</u> claims against the United States are **DISMISSED**;

2. Plaintiff's <u>Bivens</u> claims against the named Defendants in their official capacity are **DISMISSED**; and

3. Defendants are **GRANTED SUMMARY JUDGMENT** on all of Plaintiff's remaining Eighth Amendment claims.

The Clerk of Courts is directed to enter judgment for Defendants and close the case file.


         s/ Yvette Kane
        Yvette Kane, Chief Judge
        United States District Court
        Middle District of Pennsylvania